# IN THE CIRCUIT COURT FOR MAURY COUNTY, TENNESSEE

JAMES PATE
3030 Buffalo Road
Lawrenceburg, Lawrence Co. TN 38464

    Plaintiff,

v.

PEPSI BEVERAGES COMPANY

    Serve:
    Betsy Harkleroad
    Unit Manager
    2204 Oakland Parkway
    Columbia, TN 38401

and

BOTTLING GROUP, LLC, a/k/a
PEPSI BEVERAGES COMPANY

    Agent for Service of Process:
    C. T. Corporation System
    Suite 2021, 800 S. Gay Street
    Knoxville, TN 37929-9710

and

NEW BERN TRANSPORT CORPORATION

    Agent for Service of Process:
    C. T. Corporation System
    Suite 2021, 800 S. Gay Street
    Knoxville, TN 37929-9710

and

PEPSI-COLA GENERAL BOTTLERS, INC.

    Agent for Service of Process:
    C. T. Corporation System
    Suite 2021, 800 S. Gay Street
    Knoxville, TN 37929-9710

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

NO. 14265

JURY DEMAND

FILED
2012 MAR 30 PM 3:45
KATHY KELLEY, CIRCUIT CLERK
MAURY COUNTY, TN

STATE OF TENNESSEE MAURY COUNTY
I, the undersigned clerk, do hereby certify that
this is a true and correct copy of the original
of this instrument. This 30 day of
March 2012
Kathy Kelley
Circuit Court Clerk

and                                          )
                                             )
DELTA BEVERAGE GROUP, INC.                   )
                                             )
     Agent for Service of Process:    )
     C. T. Corporation System         )
     Suite 2021, 800 S. Gay Street    )
     Knoxville, TN 37929-9710         )
                                             )
and                                          )
                                             )
PEPSI-COLA METROPOLITAN BOTTLING             )
COMPANY, INC., the successor company of      )
The PEPSI BOTTLING GROUP, INC., and          )
PEPSI AMERICAS, INC. and PEPSI BOTTLING      )
GROUP-743 and PC METRO BOTTLING              )
                                             )
     Agent for Service of Process:    )
     C. T. Corporation System         )
     Suite 2021, 800 S. Gay Street    )
     Knoxville, TN 37929-9710         )
                                             )
and                                          )
                                             )
PEPSICO, INC.                                )
                                             )
     Agent for Service of Process:    )
     C. T. Corporation System         )
     Suite 2021, 800 S. Gay Street    )
     Knoxville, TN 37929-9710         )
                                             )
and                                          )
                                             )
GRAYHAWK LEASING, LLC                        )
                                             )
     Agent for Service of Process:    )
     C. T. Corporation System         )
     Suite 2021, 800 S. Gay Street    )
     Knoxville, TN 37929-9710         )
                                             )
       Defendants.                )

2

## COMPLAINT

MAY IT PLEASE THE COURT, plaintiff, by and through counsel, files this Complaint seeking equitable relief, compensatory and punitive damages, back and front pay, and attorney fees, court costs, discretionary costs, and all other damages to which he is entitled, for violation of the Tennessee Human Rights Act ("THRA"), T.C.A. §4-21-101, *et. seq.*, The Family and Medical Leave Act of 1993, as amended ("FMLA"), 29 USC 28, *et. seq.*, 29 CFR 825, et. seq., Employment of the Disabled, Discrimination Prohibited, T.C.A. §8-50-103, *et. seq.*, and retaliatory discharge suffered by plaintiff while employed by defendant(s).

### The Parties

1. Plaintiff, James F. Pate, is a fifty-seven (57) year old male, a citizen of the United States of America and a resident of Lawrence County, Tennessee.

2. Defendants, Pepsi Beverages Company, Bottling Group, LLC, a/k/a Pepsi Beverages Company, New Bern Transport Corporation, Pepsi-Cola General Bottlers, Inc., Delta Beverage Group, Inc., Pepsi-Cola Metropolitan Bottling Company, Inc, the successor company of the Pepsi Bottling Group, Inc. and Pepsi Americas, Inc., PepsiCo, Inc., and Grayhawk Leasing, LLC, (hereafter collectively referred to as "PepsiCo" or "defendant(s)") for the most part are foreign corporations licensed to do business in Tennessee, whose agent for service of process registered with the Tennessee Secretary of State is C.T. Corporation System, Suite 2021, 800 S. Gay Street, Knoxville, TN 37929-9710.

3. Defendant(s), PepsiCo, is a beverage manufacturing, sales and distribution operating unit in the United States and worldwide. It employs approximately 70,000 people. Exhibit "1" supports this allegation in general.

3

4. Each of the aforenamed defendant parties are named because the defendant, Bottling Group, LLC ("Pepsi Beverages Company"), thought it important enough to include each in an "Employment Transition Agreement and General Release" it gave to plaintiff for consideration on or about March 31, 2011. A copy of said agreement is attached hereto in support of this allegation in general as Exhibit "2".

5. The defendant, Grayhawk Leasing, LLC, is made a party because it at some time or another during the relevant period of time had something to do with payment of money to the plaintiff. Exhibit "3" supports this allegation in general.

6. Pepsi-Cola Metropolitan Bottling Company, Inc., the successor company of the Pepsi Bottling Group, Inc., and Pepsi Americas, Inc., and Pepsi Bottling Group – 743 and PC Metro Bottling is made a party because of the aforesaid and because Exhibit "4" supports this allegation in general.

7. On information and belief, defendant(s) PepsiCo has continually employed at least fifty (50) employees and has continuously been and is now, an employer engaged in industry affecting commerce.

8. On information and belief, defendant(s) Bottling Group, LLC, a/k/a/ Pepsi Beverages Company, has continually employed at least fifty (50) employees and has continuously been and is now, an employer engaged in industry affecting commerce.

### Jurisdiction and Venue

9. This action arises in part under the Tennessee Human Rights Act ("THRA"), T.C.A. §4-21-101, *et. seq.*, The Family and Medical Leave Act of 1993, as amended ("FMLA"), 29 USC 28, *et. seq.*, 29 CFR 825, et. seq., Employment of the Disabled, Discrimination

4

Prohibited, T.C.A. §8-50-103, *et. seq.* and retaliatory discharge suffered by plaintiff while employed by defendant(s) and, the common and codified law of the State of Tennessee.

10. Venue is proper because the events alleged substantially occurred in Columbia, Maury County, Tennessee, and the plaintiff worked out of the defendant's office located at 2204 Oakland Parkway, Columbia, TN 38401. Exhibit "5" supports this allegation in general and shows where the defendant(s) held itself/themselves out to the public as Pepsi Beverages Company in Columbia, Maury County, Tennessee.

## Factual Allegations

11. Plaintiff, James F. Pate, became employed with defendant(s) on April 4, 1988.

12. During plaintiff's employment with defendants, at all relevant times herein, he was a service field technician and worked repairing drink coolers, vending machines, ice makers and fountains.

13. In 2006 plaintiff suffered a cerebral vascular accident (CVA)(stroke).

14. Subsequent to plaintiff's CVA/stroke, he underwent a period of recuperation including physical therapy. He still has some permanent complications resulting from the CVA/stroke, including paralysis on his right side. Plaintiff was eventually able to return to work with the defendant(s).

15. After returning to work, plaintiff battled depression and stress for which he took anti-depressant medications.

16. On October 7, 2010, plaintiff fell while performing work for the defendant(s) in Wayne County, Tennessee, and suffered a fracture to his lower back.

5

17. Plaintiff's October 7, 2010, injury arose out of and in the course and scope of his employment duties for defendant(s).

18. Plaintiff reported his October 7, 2010, work injury to his employer and filed a worker's compensation claim.

19. Plaintiff further suffered during his employment with defendant(s) from chronic pain, anxiety, and emotional outbursts related to his physical and emotional ailments/injuries.

20. Plaintiff takes several medications for his medical conditions, all of which have been prescribed under the supervision of his physicians. These medications are paid for by defendant(s) through its/their health and/or workers compensation system.

21. Plaintiff was over 40 years old and a member of a protective class of persons over 40 years old at all relevant times herein.

22. Plaintiff was terminated from the employment of defendant(s) on or after March 31, 2011.

23. At all relevant times hereto, plaintiff was qualified for his former position in the employment of the defendant(s).

24. Plaintiff was treated adversely, as compared to other employees under 40 years of age, and was terminated by defendant(s) without just cause.

25. Defendant(s) hired an employee or transferred an employee under 40 years of age to fill the job position made empty as a result of plaintiff's termination.

26. Plaintiff was discharged by defendant(s) on the basis of his age, in violation of Tennessee Human Rights Act, T.C.A. §4-21-101, *et. seq.*

6

27. Any basis otherwise for the termination of plaintiff alleged by defendant(s) is pretextual and in violation of the state law.

28. This unlawful discharge has caused plaintiff to lose pay and other benefits of his employment, which has harmed plaintiff. Plaintiff seeks compensatory and punitive damages, equitable relief, pre-judgment interest, attorney fees and costs.

29. The plaintiff has a disability which impairs one or more major life activities, has a record of such impairments, and/or defendant(s) perceived plaintiff to have such impairments.

30. Plaintiff was qualified to work for defendant(s) in his respective position of employment.

31. Defendant(s) terminated plaintiff's employment on the basis of his disabilities.

32. Defendant(s) discriminated against the plaintiff in that defendant(s) terminated plaintiff's employment on the basis of his disabilities and/or perceived disabilities in violation of Employment of the Disabled, Discrimination Prohibited, T.C.A. §8-50-103, *et. seq.*

33. This unlawful discharge has caused plaintiff to lose pay and other benefits of his employment which has harmed plaintiff. Plaintiff seeks compensatory and punitive damages, pre-judgment interest, attorney fees and costs.

34. Defendant(s) is/are a "covered employer" with fifty (50) or more employees during twenty (20) or more weeks from the time frame of January 1, to May 27, 2011, or 2010 calendar year as defined under the FMLA.

35. The defendant(s) are subject to the requirements of the FMLA.

7

36. Between October 7, 2010, and March 31, 2011, the plaintiff was an "eligible employee" or "covered employee" to be within the parameters of making a valid FMLA claim in that he had worked a minimum of 1,250 hours of service during the previous twelve (12) months, whether it be October 7, 2010, or March 31, 2011.

37. On March 31, 2011, the plaintiff was given twenty-one (21) days during which to consider signing the "Employment Transition Agreement and General Release", which is Exhibit "2" to this Complaint, the 21st day expiring after April 21, 2011.

38. On April 21, 2011, the plaintiff transmitted by facsimile transaction to the defendant(s) which was received by defendant(s) on said date a writing which stated, "On March 31, 2011, Pepsi discussed with me ending my employment with them on July 1, 2011. I did not want to do that. My family doctor, Dr. Gregory Hines, has written a letter and completed a FMLA form for me. It is affixed with this letter. Please place me on FMLA so I can get well and restart my worker's compensation temporary weekly benefits." Attached hereto as Exhibit "6" is a letter from defendant, Pepsi Beverages Company, which references said facsimile transaction.

39. Attached hereto as Exhibit "7" is a letter signed by Dr. Gregory Hines dated April 21, 2011. Said letter discusses one or more serious health conditions, as defined in the FMLA, of the plaintiff.

40. Attached hereto as Exhibit "8" is a four page form entitled, "Certification of Healthcare Provider for Employee Serious Health Condition (Family and Medical Leave Act) purportedly signed by Dr. Gregory Hines dated 04-21-11.

41. The defendant(s) provided the plaintiff with a separation notice dated 05-27-11 stating he was discharged from his employment with defendant, Pepsi Beverages Company

8

03-31-11. A copy of this separation notice from the defendant(s) is attached hereto as Exhibit "9".

42. Defendant(s) retaliated against the plaintiff for making a claim under the FMLA.

43. This unlawful retaliation and discharge of plaintiff has caused plaintiff to lose pay and other benefits of his employment, which has harmed the plaintiff. Plaintiff seeks compensatory and punitive damages, pre-judgment interest, attorney fees and costs.

44. Plaintiff's request for worker's compensation benefits is a protected activity under the law.

45. The plaintiff's request for worker's compensation benefits was a substantial motivating factor in defendant(s)' discharge decision.

46. Plaintiff's request for FMLA benefits is a protected activity under the law.

47. Plaintiff's request for FMLA benefits was a substantial motivating factor in defendant(s)' discharge decision of plaintiff.

48. This unlawful retaliation and discharge of plaintiff has caused plaintiff to lose pay and other benefits of his employment, which has harmed the plaintiff. Plaintiff seeks compensatory and punitive damages, pre-judgment interest, attorney fees and costs.

49. The defendant(s) actions asserted herein were intentional.

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF PRAYS:

1. That a jury be empaneled to hear this cause of action.

2. That the plaintiff be compensated and made whole for all earnings, wages, and other benefits he would have received but for the discriminatory and other wrong actions by the defendant.

9

3. That plaintiff be awarded reasonable front pay and back pay.

4. That plaintiff be awarded compensatory damages in the amount of One Million Dollars ($1,000,000.00).

5. That plaintiff be awarded punitive damages in the amount of Five Million Dollars ($5,000,000.00).

6. That plaintiff be awarded pre-judgment interest.

7. That plaintiff be reinstated with back pay.

8. That plaintiff be awarded costs, including reasonable attorney fees in accordance with applicable law, pre-judgment interest, court costs, and discretionary costs.

9. For such other, further and general relief as the Court and/or jury deem proper.

Respectfully submitted,

Ben Boston (BPR# 11800)
Ryan P. Durham (BPR# 22073)
Boston, Holt, Sockwell & Durham, PLLC
P.O. Box 357
Lawrenceburg, TN 38464
(931) 762-7167
Attorneys for James Pate

## COST BOND

Pursuant to Tenn. Code Ann. § 20-12-120, we acknowledge ourselves sureties for the successful prosecution of the plaintiff's cause of action, and, in case of failure, for the payment of

10

court costs and taxes which may be awarded against the plaintiff, except in cases and instances specially excepted.

_____
Principal

Boston, Holt, Sockwell & Durham, PLLC,
Surety
By: _____

Case 1:12-cv-00036   Document 1-1   Filed 05/02/12   Page 11 of 30 PageID #: 16



**PEPSICO**

## The PepsiCo Family

Meet the four major divisions of the PepsiCo family: PepsiCo Americas Beverages, PepsiCo Americas Foods, PepsiCo Europe, PepsiCo Middle East and Africa.



| PepsiCo Americas Beverages | PepsiCo Americas Foods | PepsiCo Europe | PepsiCo Asia, Middle East & Africa |
|---|---|---|---|



### PepsiCo Americas Beverages

Pepsi was founded in 1898 by Caleb Bradham, a New Bern, North Carolina, druggist, who first formulated Pepsi-Cole.

Today, Brand Pepsi is part of a portfolio of beverage brands that includes carbonated soft drinks, juices and juice drinks, ready-to-drink teas and coffee drinks, isotonic sports drinks, bottled water and enhanced waters. PepsiCo Americas Beverages (PAB) has well known brands such as Mountain Dew, Diet Pepsi, Gatorade, Tropicana Pure Premium, Aquafina water, Sierra Mist, Mug, Tropicana juice drinks, Propel, SoBe, Slice, Dole, Tropicana Twister and Tropicana Season's Best.

In 1992 PAB formed a partnership with Thomas J. Lipton Co. to sell ready-to-drink tea brands in the United States. Pepsi-Cola also markets Frappuccino ready-to-drink coffee through a partnership with Starbucks.

Tropicana was founded in 1947 by Anthony Rossi as a Florida fruit packaging business. In 1954 Rossi pioneered a pasteurization process for orange juice. For the first time, consumers could enjoy the fresh taste of pure not-from-concentrate 100% Florida orange juice in a ready-to-serve package. The juice, Tropicana Pure Premium, became the company's flagship product. PepsiCo acquired Tropicana, including the Dole juice business, in August 1998.

SoBe became a part of PAB in 2001. SoBe manufactures and markets an innovative line of beverages including fruit blends, energy drinks, dairy-based drinks, exotic teas and other beverages with herbal ingredients.

Gatorade thirst quencher sport drinks, was acquired by The Quaker Oats Company in 1983 and became a part of PepsiCo with the merger in 2001. Gatorade is the world's first isotonic sports drink as is backed by 40 years of science. Created in 1965 by researchers at the University of Florida for the school's football team, "The Gators," Gatorade is now the world's leading sport's drink.

### About Pepsi Beverages Company

Pepsi Beverages Company (PBC) is PepsiCo's beverage manufacturing, sales and distribution operating unit in the United States, Canada and Mexico. PBC handles approximately 75 percent of PepsiCo's North America beverage volume. Its diverse portfolio includes some of the world's most widely recognized beverage brands, including Pepsi, Mountain Dew, Sierra Mist, Aquafina, Gatorade, SoBe, Lipton, and Amp Energy. In many markets, PBC also manufactures and/or distributes non-Pepsi brands, including Dr Pepper, Crush, ROCKSTAR, and Muscle Milk. The operating unit is headquartered in Westchester County, New York and employs approximately 70,000 people.

Learn More about Pepsi Beverages Company.

Americas
Europe
Asia, Middle East & Africa
🏴 Argentina
🌐 Brazil
🍁 Canada
🌐 Mexico
🏴 United States
**All Global Sites »**

*EX. 1*

Case 1:12-cv-00036   Document 1-1   Filed 05/02/12   Page 12 of 30 PageID #: 17

# Employment Transition Agreement and General Release

James F. Pate (the "Employee") and Bottling Group, L.L.C. ("Pepsi Beverages Company" or the "Company") agree that the following sets out their complete agreement and understanding regarding the conclusion of the Employee's employment with the Company.

1.  Employee's employment with the Company will conclude effective July 1, 2011 but Employee will not be actively engaged in Employee's current position after March 31, 2011 (the "Transition Period"). Employee will be treated as being on a paid severance during the Transition Period.

2.  In consideration for the promises made by the Employee in Paragraph 3 below, the Company and Employee agree as follows:

    a)  Employee will continue to receive Employee's 40 hours of weekly wages paid at Employee's current vacation rate during the Transition Period provided that Employee does not revoke the Transition Agreement in accordance with the Older Worker Benefit Protection Act, as described below.

    b)  Employee will continue to receive benefits coverage, including medical coverage, dental coverage, vision coverage, health care reserve account, accident insurance, life insurance, and group legal based on the Employee's Benefits elections in effect during the Transition Period. All other benefits terminate subject to the terms and conditions of the plan, program, or arrangement which provides the particular benefit or coverage at issue.

    c)  Employee will be paid out 4 earned sick days within two (2) weeks of full execution of this Transition Agreement.

    d)  At the end of the Transition Period, Employee will be eligible for early retirement provided he meets all application and eligibility requirements. Employee must apply before benefits begin by calling the Pension Service Center at 1-877-724-7373 no more than 90 days but no less than 45 days before Employee would like benefits to begin.

    e)  The Company agrees not to contest Employee's application for unemployment benefits, if Employee is otherwise eligible under the state in which Employee resides.

    f)  Except as specifically provided by the express terms of this Agreement, all benefits or coverages made available to Employee will be subject to the terms and conditions of the plan, program or arrangement which provides the particular benefit or coverage at issue.

    g)  All payments made to the Employee will be reduced by all applicable federal, state and local taxes, group benefit costs, amounts owed to the Company and other legally required deductions.

    h)  Employee will not be eligible for severance pay or other severance benefits under any severance plan or program or arrangement sponsored or funded by the Company.

    i)  Any and all vested and outstanding equity awards, including stock options and restricted stock units, must be exercised in accordance with their terms or they will lapse.

3.  In consideration for the promises made by the Company in Paragraph 2 above, the Employee agrees as follows:

*EX. 2 (1 of 5 pages)*

a) Except for claims the Employee may have for workers' compensation benefits, for pension benefits or for health care, life, disability or similar other benefits (which are not released by this Agreement), Employee agrees to and does release and forever discharge the Company, defined to include Bottling Group, L.L.C., New Bern Transport Corporation, Pepsi-Cola General Bottlers, Inc., PepsiAmericas, Inc., Delta Beverage Group, Inc., Pepsi-Cola Metropolitan Bottling Company, PepsiCo, Inc., as well as its parents, successors, predecessors, subsidiaries, affiliates, divisions, former and current officers, directors, employees, agents and representatives, in their individual and official capacity (collectively referred to as "Company"), any related or successor corporation or other entity, its benefit plans and programs, and all of their officers, directors, shareholders, employees, administrators, trustees, agents and representatives (collectively the "Releasees") from any and all losses, expenses, liabilities, claims, rights and entitlements of every kind and description (collectively the "Claims"), whether known or unknown, that the Employee has now or may later claim to have had against any of the Releasees arising out of anything that has occurred up through the date the Employee signs this Agreement, including, without limitation, any Claims arising out of his employment or termination of employment with the Company. The Employee agrees that this release includes, but is not limited to, claims for severance or related pay or benefits, back pay, reinstatement, personal injuries, breach of contract (express or implied), breach of any covenant of good faith and fair dealing (express or implied), or for recovery of any losses or other damages to the Employee or the Employee's property based on any alleged violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. (prohibiting discrimination on account of race, sex, color, national origin or religion); the Civil Rights Act of 1866, 42 U.S.C. §1981 et seq. (prohibits race discrimination in the making and enforcing of contracts); the Age Discrimination in Employment Act of 1967 (29 U.S.C. §621 et seq. (prohibiting discrimination on account of age); the Americans With Disabilities Act of 1990, 42 U.S.C. §12101 et seq.; (prohibiting discrimination on account of disabilities); the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 et seq.; the Rehabilitation Act of 1973, 29 U.S.C. §701 et seq.; the National Labor Relations Act; the Equal Pay Act, the Fair Labor Standards Act; all other applicable federal laws protecting whistleblowers; all applicable state laws prohibiting discrimination, providing for accommodation or leaves, governing wage and hour obligations, providing for whistleblower protection; or any other federal, state or local statutory or common law. This release does not bar a challenge to whether the release meets the voluntary and knowing requirements of the Older Workers Benefit Protection Act; nor does it bar an action to enforce the terms of this Transition Agreement.

b) While Employee acknowledges that Employee may have sustained or may yet sustain damages, costs or expenses that are presently unknown and that relate to Claims between the Employee and the Releasees, the Employee expressly waives and relinquishes all rights and benefits which Employee may have under any state or federal statute or common law principle that would otherwise limit the effect of this Agreement to claims known or suspected prior to the date the Employee signs this Agreement, and the Employee does so understanding and acknowledging the significance and consequence of such specific waiver. The Employee expressly acknowledges that this Agreement is intended to include in its effect, without limitation, all Claims which the Employee does not know or suspect to exist in his favor at the time Employee signs this Agreement, and that this Agreement contemplates the extinguishment of any such Claims.

c) Employee will not file or pursue any claims, complaints, charges or lawsuits against any of the Releasees about anything that has occurred up to and including the date the Employee signs this Agreement. Notwithstanding this Section 3(c), nothing in this Transition Agreement bars

-2-

Employee from filing a charge with or participating in an investigation by the Equal Employment Opportunity Commission ("EEOC") or similar state or local agency. Should the EEOC or similar state or local agency initiate a claim, charge, or legal or administrative proceeding concerning any matter up to the date of this Transition Agreement, Employee will not seek or accept any personal damages or equitable relief in such claim, charge or legal or administrative proceeding.

d) The Employee acknowledges and agrees that Employee will not copy, remove or in any way use, disclose or give to others any of the Company's "Confidential Information", which includes information relating to this Agreement and also consists of information relating to its business which derives economic value, actual or potential, from not being generally known to others, including, but not limited to, technical or non-technical data, formulas (including cost and/or pricing formulas), patterns (including pricing and discount history), compilations, programs, devices, methods (including cost and/or pricing methods, marketing programs and operating methods), techniques, drawings, processes, financial data, or lists of actual or potential customers or suppliers. With respect to this confidentiality provision, the Employee specifically acknowledges that during the course of his relationship with the Company, Employee has learned important Confidential Information related to the Company's business of developing, manufacturing, processing, marketing and distributing beverage products which is not generally available to the public, including but not limited to information about new product proposals, manufacturing and technical operations, marketing and advertising plans, the Company's customers and the Company's finances.

e) For the duration of this Transition Agreement, Employee will not for himself or as an employee, agent, partner, joint venture or sole proprietorship, directly or indirectly, on his/her behalf or on behalf of any other person, firm, corporation, association or other entity, as an employee, stockholder, director, advisor, partner, agent, consultant or otherwise, provide services or perform activities for, or acquire or maintain any ownership interest in, a beverage business (including a water business) that competes with any businesses being conducted or proposed to be conducted by the Company, including but not limited to the Coca-Cola Company, Dr Pepper Snapple Group, Inc., Cott Corporation and their respective parents, divisions, subsidiaries, affiliates, bottlers, licensees or franchisees (such a beverage business, a "Competitive Enterprise"). The Employee specifically acknowledges and agrees that this covenant not to compete is necessary for the protection of the Company and that the scope of the covenant is reasonable.

f) Employee agrees that Employee will not do any act which involves active solicitation of employees from the Company (except with prior written consent of an authorized Company official), or which involves active solicitation of customers or suppliers from the Company.

g) The Employee acknowledges and agrees that Employee will not voluntarily give testimony against, or otherwise participate in, litigation against the Company, unless such testimony or other participation is subpoenaed or requested by the Company.

h) The Employee will not do or say anything which criticizes or disparages the Company, its management or practices, which disrupts or impairs the Company's normal, ongoing business operations, or which harms the Company's reputation with its employees, customers, suppliers or the public.

-3-

i) Upon execution of this Agreement, Employee will return to the Company any and all Company property in Employee's possession or subject to Employee's control, including but not limited to; keys, credit and identification cards and Company-provided equipment provided to Employee for Employee's use, together with all written or recorded materials, documents, records, notes or other papers relating to the affairs of the Company.

j) If the Employee breaches the terms of this Agreement, in addition to any other remedies provided herein, the Company may recover from the Employee the full amount given to Employee by the Company under Paragraph 2 in excess of five hundred dollars ($500.00) or the amounts of any loss, costs, damages, or expense (including attorneys fees), incurred by the Company arising out of the Employee's breach of any portion of the Agreement, whichever is more. In addition, Employee agrees to indemnify and hold the Releasees harmless from any loss, cost, damage or expense (including attorney's fees) incurred by them arising out of Employee's breach of any portion of this Employment Transition Agreement and General Release. In addition, Employee agrees to indemnify and hold the Releasees harmless from any loss, cost, damage or expense (including attorney's fees) incurred by them arising out of Employee's breach of any portion of this Employment Transition Agreement and General Release.

k) Employee agrees never to apply for employment or otherwise seek to be rehired, employed, re-employed or reinstated by the Company, and agrees that the execution of this Transition Agreement is good, sufficient and legal cause for the Company to reject any application by Employee for employment or reemployment.

l) Employee shall provide accurate information or testimony or both in connection with any legal matters if so requested by the Company. Employee shall make reasonable efforts to be available upon request to provide such information and/or testimony, in a formal and/or informal setting in accordance with the Company's request, subject to reasonable accommodation of Employee's schedule and reimbursement of reasonable expenses.

4. The existence and execution of this Employment Transition Agreement and General Release shall not be considered and shall not be admissible in any proceeding as an admission by the Company, or its agents or employees, of any liability, error, violation or omission.

5. This Employment Transition Agreement and General Release shall be binding upon and shall be for the benefit of the Company and the Employee, as well as their respective heirs, personal representatives, successors and assigns.

6. The provisions of this Employment Transition Agreement and General Release shall be severable, and the invalidity of any provision shall not affect the validity of the other provisions.

7. Employee represents and agrees that:

a. Employee has been fully paid for all the hours which Employee has worked, and other than as described in this Agreement, is not owed any additional compensation.

b. Employee has not suffered any job-related injury to which Employee might be entitled to compensation or relief, such as an injury for which Employee might receive a workers compensation award now or in the future.

-4-

c. Employee is not aware of any facts that would establish or support any allegation of a violation by Employer of the federal False Claims Act (or any similar state or federal qui tam statute) which generally prohibits fraud against the government or any violations of federal or state securities laws. Nor is Employee aware of any facts that would establish or support any allegation of a violation by Employer of the Sarbanes-Oxley Act (for corporate fraud whistleblowers).

d. Employee is not aware of any facts that might entitle Employee to a leave of absence under the Family and Medical Leave Act ('FMLA") or of any facts that would establish or support any allegation of a violation by Employer of the FMLA.

8. Employee acknowledges that to comply with the Older Worker's Benefits Protection Act of 1990, this Agreement and Release has advised Employee of the legal requirements of this Act and fully incorporates the legal requirements by reference into this Agreement as follows:

a) This Agreement is written in layman's terms, and Employee understands and comprehends its terms;

b) Employee has been advised of his rights to consult an attorney to review this Agreement;

c) Employee does not waive any rights or claims that may arise after the date the waiver is executed;

d) Employee is receiving consideration beyond anything of value to which Employee is already entitled;

e) Employee has been given twenty-one (21) days during which to consider this Agreement;

f) Employee understands Employee has seven (7) calendar days after this Agreement is signed in which to revoke this Agreement.

9. This Agreement and General Release shall take effect seven calendar days after execution by Employee.

James F. Pate                                      Bottling Group, L.L.C.

_____          _____
                                          By:
                                          Title:    Human Resources Manager

Date: _____            Date: _____3/31/11_____

NOTE:     This Agreement must be signed and returned to the Company without any alteration. Any modification or alteration of any terms of this Agreement voids the Agreement in its entirety.

-5-



**PBC**

CO    FILE #    006580-006580
PCSCUE 001031976
LOCATION  MAIL-DROP  ACCT
COLTN              410
Grayhawk Leasing LLC
1100 Reynolds Blvd
Winston Salem, NC 27102

Period Beg/End:    07/03/2011 - 07/09/2011
Advice Date:       07/15/2011
Advice Number:     0008540063
Batch Number:      000000003240

Taxable Marital Status: M

Exemptions/Allowances    Add'l
  Fed: 00              $15.00
  TN:  00

Emplid: 01031976

JAMES F PATE
3030 Buffalo Road
Lawrenceburg, TN  38464

| Earnings | Rate | Hours | Current | YTD |
|---|---|---|---|---|
| ST Dis | | | 2790.00 | 2790.00 |
| Reg Earn | | | 0.00 | 2743.44 |

| Add'l Deductions | Current | YTD |
|---|---|---|
| *401k | 223.20 | 441.32 |
| 401k Loan1 | 8.68 | 43.40 |
| *Medical | 0.00 | 172.22 |
| EE Term LF | 0.00 | 57.80 |
| *Dental | 0.00 | 48.92 |
| *Hlth FSA | 0.00 | 45.88 |
| *Med Arrear | 0.00 | 42.77 |
| SP Term LF | 0.00 | 27.64 |
| EE Lif Arr | 0.00 | 14.45 |
| *Den Arrear | 0.00 | 12.23 |
| LTDaft | 0.00 | 9.96 |
| *Vision | 0.00 | 7.40 |
| *EE AD&D | 0.00 | 7.16 |
| Other Deductions | 0.00 | 14.79 |
| Total Deductions | 231.88 | 945.94 |

*Excluded from Taxable Wages

Gross Pay          2790.00    5533.44

Federal Taxable Wages are    2566.80

| Tax Deductions | Current | YTD |
|---|---|---|
| Fed Withholdng | 469.68 | 713.39 |
| Fed MED/EE | 40.46 | 75.30 |
| Fed OASDI/EE | 117.21 | 218.12 |

Net Pay          1930.77    3590.69

**Other Benefits and Information**

| | Current | YTD |
|---|---|---|
| EE Imp LF | 0.00 | 1.80 |

**Direct Deposit and Check Summary**

| | | |
|---|---|---|
| Deposit Che | XXXXXXXXXXXXX | 1,930.77 |
| Net Check | | 0.00 |

**Message**
Address change-call HR/Others 866-572-4729
SPEAK UP! 1-866-729-4888

Total Taxes        627.35    1006.81

© 2005 Automatic Data Processing, Inc. ADP MW

---

VERIFY DOCUMENT AUTHENTICITY - COLORED AREA MUST CHANGE IN TONE GRADUALLY AND EVENLY FROM DARK AT TOP TO LIGHTER AT BTM.

**PBC**  Grayhawk Leasing LLC
1100 Reynolds Blvd
Winston Salem, NC  27102

Advice Number:    0008540063

Advice Date:      07/15/2011

Deposited to the account of          Account Number                      Amount
JAMES F PATE                         XXXXXXXX4065                        1930.77

**THIS IS NOT A CHECK**

**NON-NEGOTIABLE**

FX  3



## The Pepsi Bottling Group, Inc. and PepsiAmericas, Inc. Stockholders Approve Mergers

1. Americas
2. Europe
3. Asia, Middle East & Africa

PURCHASE, N.Y., Feb. 17 /PRNewswire-FirstCall/ -- PepsiCo, Inc. (NYSE: PEP) announced today that the stockholders of each of The Pepsi Bottling Group, Inc. (NYSE: PBG) and PepsiAmericas, Inc. (NYSE: PAS) approved and adopted their respective merger agreements with PepsiCo and Pepsi-Cola Metropolitan Bottling Company, Inc. ("Metro"), a wholly owned subsidiary of PepsiCo, pursuant to which each of PBG and PAS will be merged with and into Metro, with Metro continuing as the surviving corporation.

More than 95% of the votes cast by holders of shares of PBG common stock outstanding as of the record date for the meeting, voting separately as a single class, voted to adopt the merger agreement with respect to PBG and more than 81% of the combined voting power of PBG common stock and PBG Class B common stock outstanding as of the record date for the meeting, voting as a single class, voted to adopt the merger agreement with respect to PBG.

Approximately 86.5% of shares of PAS common stock outstanding as of the record date for the meeting voted to adopt the merger agreement with respect to PAS. Of the votes cast by holders of shares of PAS common stock, approximately 99.7% voted to adopt the merger agreement with respect to PAS.

PepsiCo hopes to close the acquisitions, which remain subject to regulatory approvals and the satisfaction of other customary closing conditions, by the end of February 2010.

About PepsiCo

PepsiCo offers the world's largest portfolio of billion-dollar food and beverage brands, including 18 different product lines that each generate more than $1 billion in annual retail sales. Our main businesses -- Frito-Lay, Quaker, Pepsi-Cola, Tropicana and Gatorade -- also make hundreds of other tasty foods and drinks that bring joy to our consumers in over 200 countries. With more than $43 billion in 2009 revenues, PepsiCo employs approximately 203,000 people who are united by our unique commitment to sustainable growth, called Performance with Purpose. By dedicating ourselves to offering a broad array of choices for healthy, convenient and fun nourishment, reducing our environmental impact, and fostering a diverse and inclusive workplace culture, PepsiCo balances strong financial returns with giving back to our communities worldwide. For more information, please visit www.pepsico.com.

Statements in this communication that are "forward-looking statements" are based on currently available information, operating plans and projections about future events and trends. They inherently involve risks and uncertainties that could cause actual results to differ materially from those predicted in such forward-looking statements. Such risks and uncertainties include, but are not limited to: PepsiCo's ability to consummate the acquisitions of PBG and PAS and to achieve the synergies and value creation contemplated by the proposed acquisitions; PepsiCo's ability to promptly and effectively integrate the businesses of PBG, PAS and PepsiCo; the timing to consummate the proposed acquisitions and any necessary actions to obtain required regulatory approvals; the diversion of management time on transaction-related issues; changes in demand for PepsiCo's products, as a result of shifts in consumer preferences or otherwise; increased costs, disruption of supply or shortages of raw materials and other supplies; unfavorable economic conditions and increased volatility in foreign exchange rates; PepsiCo's ability to build and sustain proper information technology infrastructure, successfully implement its ongoing business process transformation initiative or outsource certain functions effectively; damage to PepsiCo's reputation; trade consolidation, the loss of any key customer, or failure to maintain good relationships with PepsiCo's bottling partners, including as a result of the proposed acquisitions; PepsiCo's ability to hire or retain key employees or a highly skilled and diverse workforce; changes in the legal and regulatory environment; disruption of PepsiCo's supply chain; unstable political conditions, civil unrest or other developments and risks in the countries where PepsiCo operates; and risks that benefits from PepsiCo's Productivity for Growth initiative may not be achieved, may take longer to achieve than expected or may cost more than currently anticipated.

For additional information on these and other factors that could cause PepsiCo's actual results to materially differ from those set forth herein, please see PepsiCo's filings with the SEC, including its most recent annual report on Form 10-K and subsequent reports on Forms 10-Q and 8-K. Investors are cautioned not to place undue reliance on any such forward-looking statements, which speak only as of the date they are made. PepsiCo undertakes no obligation to update any forward-looking statements, whether as a result of new information, future events or otherwise.

SOURCE PepsiCo, Inc

SOURCE PepsiCo

Argentina
Brazil
Canada
Mexico
United States
All Global Sites »

*EX 4 p 1 of 2*

Employer/Carrier's Attorney:                    Date of Injury:  10/07/2010
Edward Usborne Babb
P O Box 2649
Knoxville, TN  37901-2649

                                    Employer Name:   PC Metro Bottling
                                    State File Number:   86851-2010
                                    Employee Name:   JAMES
                                                     F
                                                     PATE
                                    Date and Time:   01/30/2012   9:00 AM
                                    Specialist Name:   Henry Tupis
                                                     (615) 848-6721


## BENEFIT REVIEW CONFERENCE EMPLOYER STANDARD DISCOVERY FORM

THE FOLLOWING IS TO BE COMPLETED/PRODUCED BY THE EMPLOYER. Please use additional sheets of paper as needed. Please provide a copy of any records requested to the mediating specialist and also to the Employee or Employee's Attorney.

1)    Please produce the Employer's First Report of Injury (C20); the Wage Statement (C41) and Agreement between Employer/Employee Choice of Physicians (C42).

2)    Please produce all medical records documenting treatment for this claimed injury, to include documentation of the date of maximum medical improvement and all impairment ratings. If any medical charges are in dispute, please note and provide documentation. This request may be waived if Employee or Employee's attorney already has this information.

3)    If Employee has returned to work, please provide a Job Description for Employee prior to the injury and also after the Employee's return to work. If there is no return to work, please explain why.

4)    If applicable, please state the basis for denial of claim and supporting documentation.

5)    Please produce employment/personnel records that are pertinent to this claim, including current wage, if Employee has returned to work for Employer.

6)    Please give a statement of issues in dispute:

      a)___Degree of vocational disability_____

      b)_____

      c)_____


If represented by counsel please have counsel attach a brief summary of Employer's position in this matter.

I hereby affirm that the information given above is true and correct to the best of my knowledge, information and belief.

_____          _____
Employer Signature                       Employer Attorney Signature

By (title):_____         Dated____1/24/12_____

Dated_____


*EX Y p2 r3*

# TENNESSEE DEPARTMENT OF LABOR AND WORKPLACE DEVELOPMENT
## EMPLOYER'S FIRST REPORT OF WORK INJURY OR ILLNESS

C20

**CLAIMS ADMIN/CARRIER**

| | | |
|---|---|---|
| JURISDICTION CLAIM # (STATE FILE #) | CLAIM TYPE CODE | THE USE OF THIS FORM IS REQUIRED UNDER THE PROVISIONS OF THE TENNESSEE WORKERS' COMPENSATION LAW AND MUST BE COMPLETED AND FILED WITH YOUR INSURANCE CARRIER IMMEDIATELY AFTER NOTICE OF INJURY. |
| CLAIMS ADMIN CLAIM # (INSURER CLAIM #) | [ ] MED ONLY [X] INDEMNITY [ ] BECAME LOST TIME [ ] BECAME MED ONLY [ ] NOTIFY ONLY [ ] TRANSFER | IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO ANY PARTY TO A WORKERS' COMPENSATION TRANSACTION FOR THE PURPOSE OF COMMITTING FRAUD. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF BENEFITS. |
| OSHA LOG CASE # | | IF YOU HAVE QUESTIONS, THE STATE NOW HAS A BENEFIT REVIEW SYSTEM WHERE A WORKERS' COMPENSATION SPECIALIST CAN PROVIDE ASSISTANCE. CALL 1-800-332-2667 (TDD). |
| NAME OF INSURANCE CARRIER | CARRIER FEIN | |
| CLAIMS ADMIN FIRM NAME (if different from carrier) Sedgwick | FEIN OF CLAIMS ADM | |
| CLAIMS ADJUSTER NAME | CLAIMS ADJ PHONE # (800) 548-1373 | |
| CLAIM HANDLING OFFICE ADDRESS LINE 1 AND LINE 2 P O Box 14434 | CITY Lexington | STATE KY | ZIP 40512443 |

**EMPLOYER**

| | | | |
|---|---|---|---|
| EMPLOYER NAME Pepsi Bottling Group - 763 | EMPLOYER FEIN 134042452 | SIC CODE 5149 | PHONE NUMBER (615)350-4885 |
| EMPLOYER ADDRESS LINE 1 AND LINE 2 2204 OAKLAND PARKWAY | | NATURE OF BUSINESS Bottling/Distribution | |
| CITY COLUMBIA | STATE TN | ZIP 38401 | INSURED REPORT # | EMPLOYER LOCATION 763 |

**POLICY**

| | | |
|---|---|---|
| INSURED NAME (parent co. if different than employer) Pepsi Beverages Company | POLICY NUMBER | EFF DATE | EMPLOYMENT STATUS CODE [X] FULL TIME/REGULAR [ ] PART TIME [ ] PIECE WORKER [ ] SEASONAL [ ] VOLUNTEER [ ] APPRENTICE FULL TIME [ ] APPRENTICE PART TIME |
| | SELF INSURED? [ ] YES [X] NO | EXP DATE | |

**EMPLOYEE**

| | | |
|---|---|---|
| EMPLOYEE LAST NAME PATE | PHONE INCL AREA 931-762-9734 | GENDER [X] MALE [ ] FEMALE [ ] UNKNOWN |
| FIRST JAMES | MI F | DEPARTMENT REGULARLY WORKED MARKETING EQUIPMENT |
| ADDRESS LINE 1 AND LINE 2 3030 BUFFALO ROAD | | OCCUPATION DESCRIPTION FIELD SERVICE TECH |
| CITY LAWRENCEBURG | STATE TN | ZIP 38464 | MARITAL STATUS [ ] UNMARRIED, SINGLE, DIVORCED [X] MARRIED [ ] SEPARATED [ ] UNKNOWN | NCCI CLASS CODE |
| SSN 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 | DATE OF BIRTH 09/12/1954 | DATE OF HIRE 04/04/1986 | | |

**WAGE**

| | | | | |
|---|---|---|---|---|
| WAGE $ $16.10 | PERIOD [X] HOURLY [ ] DAILY [ ] WEEKLY [ ] BI-WEEKLY [ ] MONTHLY | NUMBER OF DAYS WORKED PER WEEK 5 | SALARY CONTINUED IN LIEU OF COMPENSATION [ ] YES [ ] NO | |
| | | | FULL WAGES PAID FOR DATE OF INJURY [ ] YES [ ] NO | |

**ACCIDENT/INJURY**

| | | |
|---|---|---|
| DATE OF INJURY 10/07/2010 | TIME OF INJURY 13:00 [ ] AM [X] PM [ ] COULD NOT BE DETERMINED | TIME EMPLOYEE BEGAN WORK ON INJURY DATE [ ] AM [ ] PM |
| DATE EMPLOYER NOTIFIED OF INJURY 10/07/2010 | BODY PART AFFECTED CODE 4101 | NATURE OF INJURY CODE 5900 | CAUSE OF INJURY CODE 3100 |
| DATE CLAIM ADM NOTIFIED OF INJURY 10/07/2010 | HOW INJURY OF ILLNESS OCCURRED; DESCRIBE THE INCIDENT INCLUDING WHAT THE EMPLOYEE WAS DOING JUST BEFORE, THE PART OF THE BODY AFFECTED AND HOW, AND OBJECT OR SUBSTANCE THAT DIRECTLY HARMED THE EMPLOYEE | | |
| DATE LAST DAY WORKED 10/07/2010 | All Other (Specific) Injuries, NOC | | |
| DATE DISABILITY BEGAN | While EE was wheeling a refrigerant unit on a handcart back to his truck, it overbalanced and caused him to fall. EE felt flat on his back sustaining unk injuries, possibly a fracture. | | |
| RETURN TO WORK DATE (IF APPLICABLE) | Fall, Slip or Trip, NOC | | |
| DATE OF DEATH (IF APPLICABLE) | IF DEATH CLAIM, GIVE # DEPENDANTS FOR EACH RELATIONSHIP | | |
| | [ ] WIDOW [ ] WIDOWER [ ] MOTHER | [ ] FATHER [ ] DAUGHTER [ ] SON | [ ] SISTER [ ] BROTHER [ ] HANDICAPPED CHILD | TOTAL # DEPENDANTS 0 |
| DID INJURY/ILLNESS OCCUR ON EMPLOYER'S PREMISES? [ ] YES [X] NO | | | |
| ADDRESS WHERE INJURY OCCURRED (if other than employer's premises) | CITY WAYNESBORO | STATE TN | ZIP | COUNTY OF INJURY WAYNE |

| | | |
|---|---|---|
| PHYSICIAN NAME UNK | HOSPITAL OR OFF SITE TREATMENT NAME UNK HOSPITAL | |
| ADDRESS LINE 1 AND LINE 2 UNK | ADDRESS LINE 1 AND LINE 2 UNK | |
| CITY WAYNESBORO | STATE TN | ZIP | CITY WAYNESBORO | STATE TN | ZIP |
| INITIAL TREATMENT [ ] NO MEDICAL TREATMENT [ ] MINOR BY EMPLOYER [ ] MINOR BY CLINIC/HOSPITAL [X] EMERGENCY CARE | [ ] HOSPITALIZED > 24 HRS | [ ] FUTURE MAJOR MEDICAL/LOST TIME ANTICIPATED |

**OTHER**

| | | | |
|---|---|---|---|
| DATE PREPARED 10/07/2010 | PREPARER'S NAME & TITLE GARY COOK via Phone M.E.S. | PREPARER'S COMPANY NAME | PHONE NUMBER (615)350-4902 |

LR-0021 (REV. 12/07)

RDA 10183

20101000622 10/07/2010

*EX 4  3 of 3 pages*



**PBC**

PEPSI BEVERAGES COMPANY

**Betsy Harkleroad**
Unit Manager
Columbia TN

2204 Oakland Parkway
Columbia, TN 38401
Toll Free: 800-264-2617
Direct: 931-560-2377
Fax: 931-381-8181
Cell: 931-619-9712
elizabeth.harkleroad@pepsi.com
www.pepsico.com

*EX 5*



**PEPSI BEVERAGES COMPANY**

April 24, 2011

Mr. James Pate
3030 Buffalo Road
Lawrenceburg, TN 38464

Re:     FMLA Request

Dear Mr. Pate,

I am in receipt of the fax from you dated April 21, 2011. In that fax you stated:

> *"On March 31, 2011 Pepsi discussed with me ending my employment with them on July 1, 2011. I did not want to do that. My family doctor, Dr. Gregory Hines has written a letter and completed an FMLA from for me. It is fixed with this letter. Please place me on FMLA so I can get well and restart my workers compensation temporary weekly benefits."*

In our conversation on March 31, we explained to you that your employment was terminated effective March 31 as a direct result of your violation of PBC's Workplace Violence policy. We did offer you the ability to sign an agreement that would have allowed you to receive compensation through a transition agreement until July 1, 2011. You had 21 days to evaluate if you wanted to accept the terms in the agreement or not. During that meeting I provided you my contact information and informed you to please contact me if you had any questions or need any additional information. According to the conversation you had with Sarah Ball, HR coordinator on April 19 it was made clear that you had no intention of signing the agreement. The due date for that decision was April 21, 2011. At no time during the 21 day evaluation period did you contact me. The first that anyone heard of the FMLA request was after our decision to terminate your employment, and after the 21 day evaluation period ended.

Your employment was properly terminated following company policy and practice and your request for FMLA will not be considered.

If you require any additional information, please contact me at 865-521-3070 or you can e-mail me at Jennifer.Rittenhouse@pepsico.com.

Sincerely,

Jennifer Rittenhouse
Human Resource Director
Pepsi Beverages Company
Tennessee / Western Kentucky Market Unit

EX 6



Gregory A. Hines, M.D., FAAFP
Phone (931) 762-9416
Fax (931) 762-0634

**FAMILY MEDICAL CENTER**
**Board Certified in Family Medicine**

1311 South Locust Ave., Suite 102
P.O. Box 926
Lawrenceburg, Tennessee 38464

04/11/11

Boston Holt Sockwell & Durham PLLC
Attorney At Law
235 Waterloo Street
Lawrenceburg, TN 38464

RE: James Pate
    DOB 09/12/1954

Dear Mr. Boston:

The above patient had a Lacunar Stroke 06/14/2008. After a stay at Crockett Hospital he was transferred from the hospital to Crockett Acute Rehab with right side facial drop, right arm weakness with difficulty speaking. He has been in and out of Physical Therapy and seeing Orthopedic physicians with continued right shoulder pain consistent with arthrofibrosis status post CVA and limited range of motion. He has worked hard to get back to where he could return to work. Then in October 2010 he fell and had a mild compression fracture of the L1.

This patient has had to work through several challenges and with the depression and stress levels has been on antidepressant medication since his stroke. Mr. Pate still has some effects from the stroke, fractured disc and still has difficulty reading and writing. When he returned to work full time 02/28/11 after his back injury his stress level and depression increased dramatically making it difficult to manage his work schedule.

He continues to be under my care with the depression and his disabilities. If there is anything I can do to help in this situation please feel free to give me a call.

Sincerely,

Gregory A. Hines MD

EX 7

Certification of Health Care Provider for
Employee's Serious Health Condition
(Family and Medical Leave Act)

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division



OMB Control Number: 1215-0181
Expires: 12/31/2011

**SECTION I: For Completion by the EMPLOYER**

**INSTRUCTIONS to the EMPLOYER:** The Family and Medical Leave Act (FMLA) provides that an employer may require an employee seeking FMLA protections because of a need for leave due to a serious health condition to submit a medical certification issued by the employee's health care provider. Please complete Section I before giving this form to your employee. Your response is voluntary. While you are not required to use this form, you may not ask the employee to provide more information than allowed under the FMLA regulations, 29 C.F.R. §§ 825.306-825.308. Employers must generally maintain records and documents relating to medical certifications, recertifications, or medical histories of employees created for FMLA purposes as confidential medical records in separate files/records from the usual personnel files and in accordance with 29 C.F.R. § 1630.14(c)(1), if the Americans with Disabilities Act applies.

Employer name and contact: Pepsi Bottling Company 2204 Orchard Pkwy

Employee's job title: Field Service Tech    Regular work schedule: Mon-Fri 8am-5pm

Employee's essential job functions: Servicing Fountain and Vending Machines)

Check if job description is attached: _____

**SECTION II: For Completion by the EMPLOYEE**

**INSTRUCTIONS to the EMPLOYEE:** Please complete Section II before giving this form to your medical provider. The FMLA permits an employer to require that you submit a timely, complete, and sufficient medical certification to support a request for FMLA leave due to your own serious health condition. If requested by your employer, your response is required to obtain or retain the benefit of FMLA protections. 29 U.S.C. §§ 2613, 2614(c)(3). Failure to provide a complete and sufficient medical certification may result in a denial of your FMLA request. 20 C.F.R. § 825.313. Your employer must give you at least 15 calendar days to return this form. 29 C.F.R. § 825.305(b).

Your name: James                    Pate

First          Middle          Last

**SECTION III: For Completion by the HEALTH CARE PROVIDER**

**INSTRUCTIONS to the HEALTH CARE PROVIDER:** Your patient has requested leave under the FMLA. Answer, fully and completely, all applicable parts. Several questions seek a response as to the frequency or duration of a condition, treatment, etc. Your answer should be your best estimate based upon your medical knowledge, experience, and examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not be sufficient to determine FMLA coverage. Limit your responses to the condition for which the employee is seeking leave. Please be sure to sign the form on the last page.

Provider's name and business address: Family Medical Center   1311 S. Locust St. 102 Lawrenceburg, TN 38464

Type of practice / Medical specialty: Family Medicine

Telephone: (931) 762-9411    Fax: (931) 762-0634

EX B p1 of 4

1. Approximate date condition commenced: _____

   Probable duration of condition: _____

   **Mark below as applicable:**
   Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility?
   ___No ___Yes. If so, dates of admission:

   _____

   Date(s) you treated the patient for condition:

   _____

   Will the patient need to have treatment visits at least twice per year due to the condition? ___No ✓Yes.

   Was medication, other than over-the-counter medication, prescribed? ___No ✓Yes.

   Was the patient referred to other health care provider(s) for evaluation or treatment (e.g., physical therapist)?
   ✓No ___Yes. If so, state the nature of such treatments and expected duration of treatment:

   _____

2. Is the medical condition pregnancy? ✓No ___Yes. If so, expected delivery date: _____

3. Use the information provided by the employer in Section I to answer this question. If the employer fails to provide a list of the employee's essential functions or a job description, answer these questions based upon the employee's own description of his/her job functions.

   Is the employee unable to perform any of his/her job functions due to the condition: ✓No ✓Yes.

   If so, identify the job functions the employee is unable to perform:

   _____

4. Describe other relevant medical facts, if any, related to the condition for which the employee seeks leave (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment):

   _He has a history of OYA, Chronic pain, and_
   _A recent Curbs Fracture Res, this is worsening_
   _pain, Chronic worsing Depression/Anxiety + Suicidal_
   _Oithoughts._

   _____

   _____

   _____

_p2 of 4_

5. Will the employee be incapacitated for a single continuous period of time due to his/her medical condition, including any time for treatment and recovery? ✓ No ___ Yes.

    If so, estimate the beginning and ending dates for the period of incapacity: _____

6. Will the employee need to attend follow-up treatment appointments or work part-time or on a reduced schedule because of the employee's medical condition? ___ No ✓ Yes.

    If so, are the treatments or the reduced number of hours of work medically necessary? ___ No ✓ Yes.

    Estimate treatment schedule, if any, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period:

    _He will need for a follow up._

    Estimate the part-time or reduced work schedule the employee needs, if any:

    1-2 _per week_ hour(s) per day; 1 ___ days per week from _____ through _____

7. Will the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions? ✓ No ___ Yes.

    Is it medically necessary for the employee to be absent from work during the flare-ups? ✓ No ___ Yes. If so, explain:

    _____

    _____

    _____

    Based upon the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 episode every 3 months lasting 1-2 days):

    Frequency: 2 times per _____ week(s) ✓ month(s)

    Duration: _____ hours or ___ day(s) per episode

_____

_____

_____

_____

_____

_____

P.3 of 4

Case 1:12-cv-00036 Document 1-1 Filed 05/02/12 Page 27 of 30 PageID #: 32

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

_____          04-21-11
Signature of Health Care Provider          Date

PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT
If submitted, it is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29
C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB
control number. The Department of Labor estimates that it will take an average of 20 minutes for respondents to complete this
collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining
the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden
estimate or any other aspect of this collection information, including suggestions for reducing this burden, send them to the
Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC
20210. DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR; RETURN TO THE PATIENT.

Form WH-380-E Revised January 2009

P4 of 4

Case 1:12-cv-00036   Document 1-1   Filed 05/02/12   Page 28 of 30 PageID #: 33

STATE OF TENNESSEE
DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT
DIVISION OF EMPLOYMENT SECURITY
## SEPARATION NOTICE

1. Employee's Name: __James__     __Pate__
   *First*     *Middle Initial*   *Last*     2. SSN __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__

3. Last Employed: From: __04/04/88__ to __03/31/11__     Occupation. __Field Service Tech__
   *(mm/dd/yy)*     *(mm/dd/yy)*

4. Where was work performed? __Columbia TN__

5. Reason for Separation:     ☐ Lack of Work     ☑ Discharge     ☐ Quit

   If lack of work, indicate if layoff is     ☐ Permanent     ☐ Temporary

   If temporary, when do you expect to recall this individual? Date _____
   *(mm/dd/yy)*

   If temporary, report any vacation pay that will be paid.     Week Ending Date _____     Amount _____
   *(mm/dd/yy)*

   If layoff is indefinite vacation pay should not be reported.

   If other than lack of work, explain the circumstances of this separation:

   > Violation of company policy

Employer's
Name: __Pepsi Beverages Company__

Address where additional information may be obtained:

__7021 Westbelt Drive__

City: __Nashville__     State: TN     Zip Code: __37209__

Employer's
Telephone Number: __(615) 350-4805__
*(Area Code) (Number)*     *(Ext)*

Employer's E-Mail
Address     __sarah.ball@pepsico.com__

### EMPLOYER'S ACCOUNT NUMBER

| 023-490 |
|---|

*(Number shown on State Quarterly Wage Report (LB-0851) and Premium Report (LB-0456)*

I certify that the above worker has been separated from work and the information furnished hereon is true and correct. This report has been handed to or mailed to the worker.

Signature of Official or Representative of the Employer who has first-hand knowledge of the separation.

__Sarah E Ball__
Title of Person Signing

__HR Coordinator__
Date Completed and Released to Employee

__05/27/11__
*(mm/dd/yy)*

### NOTICE TO EMPLOYER

Within 24 hours of the time of separation, you are required by Rule 0800-09-01 of the Tennessee Employment Security Law to provide the employee with this document, properly executed, giving the reasons for separation. If you subsequently receive a request for the same information on LB-0810, please give complete information in your response.

### NOTICE TO EMPLOYEE

IF YOU ARE FILING A CLAIM FOR UNEMPLOYMENT INSURANCE BENEFITS BY TELEPHONE OR INTERNET YOU MAY BE INSTRUCTED TO MAIL OR FAX THE SEPARATION NOTICE TO THE TENNESSEE CLAIMS CENTER. IF YOU ARE FILING A CLAIM FOR UNEMPLOYMENT INSURANCE BENEFITS IN-PERSON PLEASE TAKE THIS NOTICE TO THE LABOR AND WORKFORCE DEVELOPMENT OFFICE.

LB-0489 (Rev. 08-09)     RDA 0063

EX 9

 **CT Corporation**

**TO:** Nancy Marden 7F49
Pepsi Beverages Company
1 Pepsi Way
Somers, NY 10589-2201

**RE:** **Process Served in Tennessee**

**FOR:** GRAYHAWK LEASING, LLC (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | James Pate, Pltf. vs. Pepsi Beverages Company, et al. including Grayhawk Leasing, LLC, Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Return, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Maury County Circuit Court, TN<br>Case # 14265 |
| **NATURE OF ACTION:** | Employee Litigation - Worker's Compensation - Wrongful termination on March 31, 2011 due plaintiff filing a Workers Compensation claim |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Knoxville, TN |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 04/04/2012 postmarked: "Illegible" |
| **JURISDICTION SERVED :** | Tennessee |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service of the summons, exclusive of the date of service |
| **ATTORNEY(S) / SENDER(S):** | Ben Boston<br>Boston, Holt, Sockwell & Durham, PLLC<br>P.O. Box 357<br>Lawrenceburg, TN 38464<br>931-762-7167 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 04/04/2012, Expected Purge Date: 04/09/2012<br>Image SOP<br>Email Notification, Nancy Marden 7F49 nancy.marden@pepsico.com<br>Email Notification, Brenda South brenda.south@pepsico.com |
| **SIGNED:** | C T Corporation System |
| **PER:** | Amy McLaren |
| **ADDRESS:** | 800 S. Gay Street<br>Suite 2021<br>Knoxville, TN 37929-9710 |
| **TELEPHONE:** | 800-592-9023 |

Page 1 of 1 / AM

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.